## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

TWENTIETH CENTURY FOX FILM
CORPORATION, a Delaware corporation;
UNIVERSAL CITY STUDIOS
PRODUCTIONS LLLP, a Delaware limited
liability limited partnership; PARAMOUNT
PICTURES CORPORATION, a Delaware
corporation; SCREEN GEMS, INC., a
Delaware corporation; DISNEY
ENTERPRISES, INC., a Delaware
corporation; WARNER BROS.
ENTERTAINMENT INC., a Delaware
corporation; and COLUMBIA PICTURES
INDUSTRIES, INC., a Delaware corporation,

                Plaintiffs,

      v.

DOES 1 - 14,

                Defendants.

Civil Action No.:
1:06-cv-00668

## MOTION FOR LEAVE TO TAKE DISCOVERY PRIOR TO RULE 26(f) CONFERENCE

### I.    INTRODUCTION

Plaintiffs, among the world's leading motion picture studios, filed this action to

stop Defendants from copying and distributing to others over the Internet unauthorized copies of

copyrighted motion pictures.  Using so-called "peer-to-peer" ("P2P") file "swapping" networks,

Defendants' infringements allow them and untold others unlawfully to obtain and distribute for

free copyrighted works that Plaintiffs invest millions of dollars to create and/or distribute.

Plaintiffs sued Defendants as Doe Defendants because Defendants committed their infringements

using on-line pseudonyms ("user names" or "network names"), not their true names. Plaintiffs seek leave of Court to serve limited discovery prior to a Rule 26(f) conference on one or more non-party Internet Service Providers ("ISPs") solely to determine the identities of the Doe Defendants. The only way that Plaintiffs can determine Defendants' true names is from the ISPs to which Defendants subscribe and from which Defendants obtain Internet access. This information is readily available to the ISPs from documents they keep in the regular course of business.[1]

For the past year, federal district courts throughout the country, including this Court, have granted expedited discovery in Doe Defendant lawsuits that are factually similar, if not identical, to the instant lawsuit.[2] In these cited cases and others like them, motion picture studios and record company plaintiffs have obtained the identities of P2P network users from ISPs through expedited discovery using information similar to that gathered by Plaintiffs in the instant case; they have used that information as the basis for their proposed subpoenas to these ISPs.

---

[1]   Because Plaintiffs do not currently know the identity of any of the Defendants, Plaintiffs cannot ascertain any of the Defendants' position on this Motion.

[2]   Such cases include Disney Enterprises, Inc., et al. v. Does 1-21, Case No. 06-237 (RWR) (D.D.C.) (Roberts, Richard W.); Metro-Goldwyn-Mayer Pictures Inc., et al. v. Does 1-10, Case No. 04-2005 (JR) (D.D.C.) (Robertson, J.); Twentieth Century Fox Film Corporation, et al. v. Does 1-9, Case No. 04-2006 (EGS) (D.D.C.) (Sullivan, E.); Lions Gate Films, Inc., et al. v. Does 1-5, Case No. 05-386 (EGS) (D.D.C.) (Sullivan, E.); UMG Recordings, et al. v. Does 1-199, Case No. 04-093 (CKK) (D.D.C.) (Kollar-Kotelly, C.); Caroline Records, Inc., et al. v. Does 1-175, Case No. 04 2028 (D.D.C.) (Lamberth, R.); Paramount Pictures Corporation, et al. v. Does 1-8, Case No. 05-535 (D.N.J.) (Wolfson, F.); Columbia Pictures Industries, Inc. v. John Doe, Case No. CV05-0134Z (W.D.Wash.) (Zilly, T.); Warner Bros. Entertainment Inc., et al. v. Does 1-7, Case No. 05 CV 0883 (S.D.N.Y.) (Cote, D.); Screen Gems, Inc., et al. v. Does 1-34, Case No. SA04CA1038OG (W.D. Tex.) (Garcia, O.); Columbia Pictures Industries, Inc., et al. v. Does 1-10, Case No. 1:05CV515-BBM (N.D. Ga.) (Martin, B.); Lions Gate Films, Inc., et al. v. Does 1-23, Case No. 04 C 7398 (N.D. Ill.) (Gottschall, J.); Paramount Pictures Corporation, et al. v. Does 1-11, Case No. 4 05CV00335CAS (E.D. Mo.) (Shaw, C.); Columbia Pictures Industries, Inc. v. John Doe (67.123.19.140), Case no. C 04 5243 PJH (N.D. Cal.) (Hamilton, P.); Metro-Goldwyn-Mayer Pictures Inc., et al. v. Does 1-2, Case No. 05CV0761-B(POR) (S.D. Cal.) (Porter, L.). See Exhibit A.

Plaintiffs respectfully request that this Court follow the well-established precedent, and grant this motion for expedited discovery against the identified ISP and any other ISPs that Plaintiffs later discover were the actual entities providing the Doe Defendants with online services and/or network access.

## II.     FACTUAL BACKGROUND

As alleged in the complaint, the Doe Defendants, without authorization, used an online P2P media distribution system to download Plaintiffs' copyrighted works and distribute Plaintiffs' copyrighted works to other users on the P2P network, including by making Plaintiffs' copyrighted works available for distribution to others.  See Complaint.  Because Defendants used fictitious network names or pseudonyms when they copied and distributed Plaintiffs' copyrighted works, Plaintiffs do not know the Defendants' actual identities.  See Declaration of Chad Tilbury ("Tilbury Decl."), ¶ 6.  However, Plaintiffs have identified each Defendant by a unique Internet Protocol ("IP") address assigned to that Defendant by his/her ISP on the date and at the time of the Defendant's infringing activity.  See Declaration of Thomas Carpenter ("Carpenter Decl."), ¶¶ 8-13.  Plaintiffs also made copies of substantial portions of at least one copyrighted motion picture that each Defendant unlawfully distributed or made available for distribution through the file sharing networks, and confirmed that such file contained a motion picture whose rights under copyright law are owned by one of the Plaintiffs.  Declaration of R. Christopher Harshman ("Harshman Decl."), ¶ 4.  All of this information was gathered by an on-line piracy technology specialist through specific systems and procedures that were designed to ensure that the information gathered about each Doe Defendant is accurate.  Tilbury Decl. ¶ 8; see generally Carpenter Decl.

Plaintiffs have identified the ISP that provided Internet access to each Defendant, and assigned the unique IP address to the Defendant, by using a publicly available database to trace the IP address for each Defendant.  Carpenter Decl., ¶¶ 9-12.  Here, the ISP is Verizon Internet Services, Inc. ("Verizon").  Id., ¶¶ 12-13.  When given a Defendant's IP address and the date and time of the infringing activity, an ISP can identify the name and address of the Doe Defendant

(*i.e.,* the ISP's subscriber) because that information is contained in the ISP's subscriber activity log files. Id., ¶¶ 9, 13.

ISPs typically keep log files of subscriber activities for only limited periods of time -- sometimes for as little as weeks or even days -- before erasing the data. Tilbury Decl., ¶ 11; Carpenter Decl., ¶ 9. For this reason, as soon as Plaintiffs identified the infringer, Plaintiffs notified Verizon of the IP address and the date and time of the infringing activity, and asked Verizon to retain the records needed to identify the subscriber who was assigned that IP address at that date and time. See Carpenter Decl., ¶ 13.

However, some ISPs lease or otherwise allocate certain of their IP addresses to other unrelated, intermediary ISPs. Id., ¶ 12. Since these lessor ISPs, as a consequence, have no direct relationship – customer, contractual, or otherwise – with the end-user, they are unable to identify the Doe Defendants through reference to their user logs. Id. The intermediary ISPs, though, should be able to identify the Doe Defendants by reference to their own user logs and records. Id. Accordingly, Plaintiffs seek leave to serve limited, immediate discovery sufficient to determine the Doe Defendants' true identities on Verizon. To the extent that Verizon, in turn, identifies a different entity as the ISP providing network access and online services to the Doe Defendants, Plaintiffs also seek leave to serve, on any such later identified ISP, limited discovery sufficient to identify the Doe Defendant prior to the Rule 26 conference.

Plaintiffs request permission to serve a Rule 45 subpoena on these ISPs seeking each Doe Defendant's true name, address, telephone number, e-mail address, and Media Access Control ("MAC") address (data available only to the ISP that identifies the specific computer used for the infringing activity). Plaintiffs will only use this information to prosecute this action. Without this information, Plaintiffs cannot pursue their lawsuit to protect their motion pictures from ongoing and repeated infringement. Tilbury Decl., ¶ 9-10.

If the Court grants this Motion, Plaintiffs will serve a subpoena on Verizon requesting the identifying information within fifteen (15) business days. If Verizon cannot itself identify one or more of the Doe Defendants but does identify an intermediary ISP as the entity providing online

services and/or network access to such Defendants, Plaintiffs will then serve a subpoena on that ISP requesting the identifying information for the relevant Doe Defendants within fifteen (15) business days.  In either case, these ISPs will be able to notify their subscribers that this information is being sought, and each Defendant will have the opportunity to raise any objections before this Court prior to the return date of the subpoena.  Thus, to the extent that any Defendant wishes to object, he or she will be able to do so.

## III.    ARGUMENT

Courts routinely allow discovery to identify "Doe" defendants.  See, e.g., Wakefield v. Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999) (error to dismiss unnamed defendants given possibility that identity could be ascertained through discovery); Valentin v. Dinkins, 121 F.3d 72, 75-76 (2d Cir. 1997) (plaintiff should have been permitted to conduct discovery to reveal identity of defendant); Dean v. Barber, 951 F.2d 1210, 1215 (11th Cir. 1992) (error to deny plaintiff's motion to join John Doe defendant where identity of John Doe could have been determined through discovery); Munz v. Parr, 758 F.2d 1254, 1257 (8th Cir. 1985) (error to dismiss claim merely because defendant was unnamed; "Rather than dismissing the claim, the court should have ordered disclosure of Officer Doe's identity"); Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980) ("where the identity of alleged defendants [are not] known prior to the filing of a complaint . . . the plaintiff should be given an opportunity through discovery to identify the unknown defendants"); Maclin v. Paulson, 627 F.2d 83, 87 (7th Cir. 1980) (where "party is ignorant of defendants' true identity . . . plaintiff should have been permitted to obtain their identity through limited discovery"); Equidyne Corp. v. Does 1-21, 279 F. Supp. 2d 481, 483 (D. Del. 2003) (allowing pre-Rule 26 conference discovery from ISPs to obtain identities of users anonymously posting messages on message boards).  As discussed above, many district courts have granted leave to motion picture studios and record companies to serve subpoenas on ISPs to obtain the identities of Doe Defendants prior to a Rule 26 conference in copyright infringement lawsuits similar to the instant action.  (See Exhibit A.)

Courts consider the following factors when granting motions for expedited discovery to identify anonymous Internet users: (1) whether the plaintiff can identify the missing party with sufficient specificity such that the Court can determine that defendant is a real person or entity who could be sued in federal court; (2) all previous steps taken by the plaintiff to identify the Doe Defendant; and (3) whether the plaintiff's suit could withstand a motion to dismiss. Columbia Ins. Co. v. Seescandy.com, 185 F.R.D. 573, 578-80 (N.D. Cal. 1999); see also Rocker Mgmt. LLC v. John Does, No. 03-MC-33 2003 WL 22149380, *1-2, (N.D. Cal. 2003) (applying Seescandy.com standard to identify persons who posted libelous statements on Yahoo! message board; denying request for expedited discovery where the postings in question were not libelous). Plaintiffs here are able to demonstrate each one of these factors.

First, Plaintiffs have sufficiently identified the Doe Defendants through the unique IP address each Doe Defendant was assigned at the time of the unauthorized distribution of the copyrighted film. See Seescandy.com, 185 F.R.D. at 578-80. See Complaint, Ex. A; Carpenter Decl., ¶¶ 7-13. These Defendants gained access to the Internet through their ISP (under cover of an IP address) only by setting up an account with the ISP. Carpenter Decl., ¶ 11. This ISP can identify each Defendant by name through the IP address by reviewing its subscriber activity logs. Id., ¶¶ 9, 13. Thus, Plaintiffs can show that all Defendants are "real persons" whose names are known to the ISP and who can be sued in federal court.

Second, Plaintiffs have specifically identified the steps taken to identify Defendants' true identities. Id., ¶¶ 7-13. Plaintiffs have obtained each Defendant's IP address and the date and time of the Defendant's infringing activities, have traced each IP address to a specific ISP, and have made copies of a sample of the motion pictures each Defendant unlawfully distributed or made available for distribution. See Complaint, Ex. A; Carpenter Decl., ¶¶ 7-13. Therefore, Plaintiffs have obtained all the information they possibly can about Defendants without discovery from the ISP.

Third, Plaintiffs have asserted a *prima facie* claim for direct copyright infringement in their Complaint that can withstand a motion to dismiss. Specifically, Plaintiffs have alleged that:

(a) they own and have registered the copyrights in the works at issue and/or own the relevant exclusive distribution rights, and (b) the Doe Defendants copied or distributed those copyrighted works without Plaintiffs' authorization.  See Complaint.  These allegations state a claim for copyright infringement.  See 17 U.S.C. § 106(1)(3); In re Aimster Copyright Litig., 334 F.3d 643, 645 (7th Cir. 2003), cert. denied, 124 S. Ct. 1069 (U.S. Jan. 12, 2004) ("Teenagers and young adults who have access to the Internet like to swap computer files containing popular music.  If the music is copyrighted, such swapping, which involves making and transmitting a digital copy of the music, infringes copyright."); A & M Records, Inc. v. Napster, Inc., 239 F.3d 1004, 1014-15 (9th Cir. 2001) ("Napster users who upload file names to the search index for others to copy violate plaintiffs' distribution rights. Napster users who download files containing copyrighted music violate plaintiffs' reproduction rights.").

Courts have also allowed expedited discovery when "good cause" is shown.  See Semitool, Inc. v. Tokyo Electron America, Inc., 208 F.R.D. 273, 275-76 (N.D. Cal. 2002); Qwest Comm. Int'l, Inc. v. WorldQuest Networks, Inc., 213 F.R.D. 418, 419 (D. Colo. 2003); Entertainment Tech. Corp. v. Walt Disney Imagineering, No. Civ. A. 03-3546, 2003 WL 22519440, at *4 (E.D. Pa. 2003) (applying a reasonableness standard; "a district court should decide a motion for expedited discovery on the entirety of the record to date and the reasonableness of the request in light of all of the surrounding circumstances") (quotations omitted); Yokohama Tire Corp. v. Dealers Tire Supply, Inc., 202 F.R.D. 612, 613-14 (D. Ariz. 2001) (applying a good cause standard).

Good cause exists here because ISPs typically retain user activity logs containing the information sought for only a limited period of time before erasing the data.  Tilbury Decl., ¶ 11; Carpenter Decl., ¶ 9.  If that information is erased, Plaintiffs will have no ability to identify the Defendants, and thus will be unable to pursue their lawsuit to protect their copyrighted works.  Tilbury Decl., ¶¶ 10, 11; Carpenter Decl., ¶¶ 9, 11.  Where "physical evidence may be consumed or destroyed with the passage of time, thereby disadvantaging one or more parties to the litigation," good cause for discovery before the Rule 26 conference exists.  Qwest Comm.,

213 F.R.D. at 419; see also Pod-Ners, LLC v. Northern Feed & Bean of Lucerne LLC, 204

F.R.D. 675, 676 (D. Colo. 2002) (allowing discovery prior to Rule 26 conference to inspect

items in defendant's possession because items might no longer be available for inspection if

discovery proceeded in the normal course).

      Good cause exists here for the additional reason that a claim for copyright infringement

presumes irreparable harm to the copyright owner.  See 4 Melville B. Nimmer & David Nimmer,

Nimmer on Copyright, § 14.06[A], at 14-03 (2003); Elvis Presley Enter., Inc. v. Passport Video,

349 F.3d 622, 631 (9th Cir. 2003).  The first and necessary step that Plaintiffs must take to stop

the infringement of their valuable copyrights is to identify the Doe Defendants who are copying

and distributing their motion pictures.  This lawsuit cannot proceed without the limited discovery

Plaintiffs seek because the ISP is the only entity that can identify the otherwise anonymous

Defendants.  Courts regularly permit early discovery where such discovery will "substantially

contribute to moving th[e] case forward."  Semitool, 208 F.R.D. at 277.

      Finally, Defendants have no legitimate expectation of privacy in the subscriber

information they provided to Verizon much less in downloading and distributing copyrighted

motion pictures without permission.  In re Verizon Internet Services, Inc., 257 F.Supp.2d 244,

267 (D.D.C. 2003), cert. denied, Recording Indus. Ass'n of America, Inc. v. Verizon Internet

Services, Inc., 351 F.3d 1229 (D.C. Cir. 2003) ("if an individual subscriber opens his computer

to permit others, through peer-to-peer filesharing, to download materials from that computer, it is

hard to understand just what privacy expectation he or she has after essentially opening the

computer to the world"); Guest v. Leis, 255 F.3d 325, 336 (6th Cir. 2001) ("computer users do

not have a legitimate expectation of privacy in their subscriber information because they have

conveyed it to another person—the system operator"); Sony Music Entertainment, Inc. v. Does

1–40, 326 F.Supp.2d 556, 566 (S.D.N.Y. 2004) ("defendants have little expectation of privacy in

downloading and distributing copyrighted songs without permission"); U.S. v. Hambrick, 55

F.Supp.2d 504, 508 (W.D. Va. 1999), aff'd, 225 F.3d 656 (4th Cir. 2000).  This is because a

person can have no legitimate expectation of privacy in information he or she voluntarily

communicates to third parties.  See, e.g., Smith v. Maryland, 442 U.S. 735, 743-44 (1979); U.S. v. Miller, 425 U.S. 435, 442-43 (1976); Couch v. U.S., 409 U.S. 322, 335-36 (1973); Leis, 255 F.3d at 335; U.S. v. Kennedy, 81 F.Supp.2d 1103, 1110 (D. Kan. 2000); Hambrick, 55 F.Supp.2d at 508.

Although Defendants copied and distributed motion pictures without authorization using fictitious user names, their conduct was not thus anonymous.  Using publicly available technology, the unique IP address assigned to each Defendant at the time of infringement can be readily identified.  Carpenter Decl. ¶¶ 7-10.  When Defendants entered into a service agreement with Verizon or any other ISP, they knowingly and voluntarily disclosed personal identification information to it.  As set forth above, this identification information is linked to the Defendants' IP address at the time of infringement, and recorded in the ISP's subscriber activity logs.  Since Defendants can, as a consequence, have no legitimate expectation of privacy in this information, this Court should grant Plaintiffs leave to seek expedited discovery of it.  Absent such leave, Plaintiffs will be unable to protect their copyrighted motion pictures from continued infringement.

Where federal privacy statutes authorize disclosure pursuant to a court order, courts have held that a plaintiff must make no more than a showing of relevance under the traditional standards of Rule 26.  See Laxalt v. McClatchy, 809 F.2d 885, 888 (D.C. Cir 1987) (court found "no basis for inferring that the statute replaces the usual discovery standards of the FRCP . . . with a different and higher standard"); accord Lynn v. Radford, No. 99-71007, 2001 WL 514360, at *3 (E.D. Mich. 2001); Gary v. United States, No. 3:97-CV-658, 1998 WL 834853, at *4 (E.D. Tenn.); see also In re Gren, 633 F.2d 825, 828 n.3 (9th Cir. 1980) ("court order" provision of Fair Credit Reporting Act requires only "good faith showing that the consumer records sought are relevant") (internal quotation omitted).  Plaintiffs plainly have met that standard, as the identity of Defendants is essential to Plaintiffs' continued prosecution of this action.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully submit that the Court should

grant the Motion for Leave to Take Discovery Prior to Rule 26 Conference and enter an Order

substantially in the form of the attached Proposed Order.

Respectfully submitted,

Dated:  _____4/13/06_____        _____/s/_____

Stanley M. Brand (D.C. Bar No. 213082)
Ross A. Nabatoff (D.C. Bar No. 376665)
Brand Law Group
923 Fifteenth Street, N.W.
Washington, DC 20005
(202) 662-9700 (telephone)
(202) 737-7565 (facsimile)

Christopher A. Mohr (D.C. Bar No. 458599)
Michael R. Klipper (D.C. Bar No. 166074)
MEYER, KLIPPER & MOHR, PLLC
(202) 637-0850 (telephone)
(202) 637-0851 (facsimile)
923 Fifteenth Street, N.W.
Washington, DC 20005

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TWENTIETH CENTURY FOX FILM CORPORATION, a Delaware corporation; UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP, a Delaware limited liability limited partnership; PARAMOUNT PICTURES CORPORATION, a Delaware corporation; SCREEN GEMS, INC., a Delaware corporation; DISNEY ENTERPRISES, INC., a Delaware corporation; WARNER BROS. ENTERTAINMENT INC., a Delaware corporation; and COLUMBIA PICTURES INDUSTRIES, INC., a Delaware corporation, | Civil Action No.: 1:06-cv-00668 |
| Plaintiffs, | |
| v. | |
| DOES 1 - 14, | |
| Defendants. | |

## DECLARATION OF CHAD TILBURY IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO TAKE DISCOVERY PRIOR TO RULE 26(f) CONFERENCE

I, Chad Tilbury, declare:

1.    I am Director of Worldwide Internet Enforcement for the Motion Picture Association of America, Inc. ("MPAA"), where I have been employed since July 2004. Prior to the MPAA, I spent five years as a Special Agent in the Air Force Office of Special Investigations where I was responsible for computer investigations and operations. I have an M.S. and a B.S. in Computer Science and have also worked as an Artificial Intelligence researcher and a computer security engineer in the defense industry. I submit this declaration in support of Plaintiffs' Motion for Leave to Take Discovery Prior to Rule 26(f) Conference.

2.      All of the Plaintiffs in this action are motion picture studios and/or distributors, among whom are members, or affiliates or subsidiaries of members, of the MPAA.  The MPAA is a trade association whose members include the largest motion picture studios in the United States.  Among other things the MPAA investigates the unauthorized reproduction and distribution of copyrighted motion pictures on behalf of its member companies.  As Director of Worldwide Internet Enforcement, I am responsible for coordinating the MPAA's worldwide enforcement effort against internet piracy.  This includes supervision of our online copyright infringement campaign, identification and development of Internet anti-piracy technologies, investigations of major online infringers and coordination of Internet anti-piracy efforts around the globe.

3.      This declaration is based on my personal knowledge, and if called upon to do so, I would be prepared to testify as to its truth and accuracy.

### Background

4.      The Internet is a vast collection of interconnected computers and computer networks that communicate with each other.  It allows hundreds of millions of people around the world to freely and easily exchange ideas and information, including academic research, literary works, financial data, music, audiovisual works, graphics, and an unending and ever-changing array of other data.  Unfortunately, the Internet also has afforded opportunities for the wide-scale infringement of copyrighted motion pictures.  Once a motion picture has been transformed into an unsecured digital format, it can be copied further and distributed an unlimited number of times over the Internet, without significant degradation in picture or sound quality.

5.      To copy and distribute copyrighted motion pictures over the Internet, many individuals use online media distribution systems or so-called "peer-to-peer" ("P2P") networks. P2P networks, at least in their most common form, are computer systems that enable Internet users to (1) make files (including motion pictures) stored on each user's computer available for copying by other users; (2) search for files stored on other users' computers; and (3) transfer exact copies of files from one computer to another via the Internet.

2

6.     At any given moment and depending on the particular P2P network involved, anywhere from thousands to millions of people, either across the country or around the world, unlawfully use the P2P network to upload (distribute) or download (copy) copyrighted material. The P2P systems represent a "viral" distribution of digital files:  each user of the system who copies a digital file from another user can then distribute the file to still other users and so on, so that almost-perfect copies of an infringing file can be distributed to millions of people worldwide with breathtaking speed.  Significantly, a person who uses a P2P network is free to use any alias (or "network name") whatsoever, without revealing his or her true identity to other users.  Thus, while Plaintiffs can observe the infringement occurring on the Internet, they do not know the true names or addresses of those individuals who are committing the infringement

7.     Because the Plaintiffs have not authorized their copyrighted motion pictures to be copied or distributed in unsecured formats by means of P2P networks, the copying and distribution of these motion pictures on P2P networks violates the copyright laws.

### Plaintiffs' Identification of the Doe Defendants

8.     In order to assist Plaintiffs in combating copyright infringement on P2P networks, the MPAA and counsel for Plaintiffs retained MediaSentry, a company that provides online anti-piracy and copyright protection services and investigations through sophisticated technology and especially developed software programs.  (See Decl. of Thomas Carpenter.)  Under the direct supervision of counsel, MediaSentry caused searches of several P2P networks to be conducted for infringing copies of motion pictures whose rights are owned by Plaintiffs.  The search function of the P2P network was used to look for network users who were offering for distribution audiovisual files that were labeled with the names of certain of Plaintiffs' copyrighted motion pictures.  Also under the direct supervision of counsel, MediaSentry conducted a review of the data contained in logs obtained from the servers of certain P2P networks.  MediaSentry determined from these logs those network users who were offering for distribution audiovisual files that were labeled with the names of certain of Plaintiffs' copyrighted motion pictures.  When a network user was located, either through use of the search

function of a P2P network or from a review of the logs from the server of a P2P network, who was making such files available for distribution, MediaSentry downloaded and retained both the files that were being offered for distribution and other specific information in order to confirm that infringement was occurring and to identify the infringer.  (See Decl. of Thomas Carpenter.) In addition, the downloaded audiovisual files were reviewed in order to confirm that the files were in fact copies of substantial portions of motion pictures whose rights are owned by Plaintiffs.  (See Decl. of R. Christopher Harshman.)

## **The Need For Expedited Discovery**

9.      Obtaining the identity of copyright infringers on an expedited basis is critical to prosecution of this action and stopping the continued infringement of Plaintiffs' copyrighted motion pictures.

10.     Without expedited discovery, Plaintiffs have no way of serving Defendants with the complaint and summons in this case.  Plaintiffs do not have Defendants' names, addresses, e-mail addresses, or any other way to identify or locate Defendants.

11.     Further, service providers have different policies pertaining to the length of time they preserve "logs" which identify their subscribers.  Despite requests to preserve the information, some ISPs keep log files of their subscribers' activities for only limited periods of time -- sometimes as little as weeks or even days -- before erasing the data they contain.  If an ISP does not have to respond expeditiously to a discovery request, the identification information in that ISP's logs may be erased.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _____, _____, at _____.

_____
Chad Tilbury

4

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| TWENTIETH CENTURY FOX FILM CORPORATION, a Delaware corporation; UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP, a Delaware limited liability limited partnership; PARAMOUNT PICTURES CORPORATION, a Delaware corporation; SCREEN GEMS, INC., a Delaware corporation; DISNEY ENTERPRISES, INC., a Delaware corporation; WARNER BROS. ENTERTAINMENT INC., a Delaware corporation; and COLUMBIA PICTURES INDUSTRIES, INC., a Delaware corporation, | Civil Action No.: 1:06-cv-00668 |
| Plaintiffs, | |
| v. | |
| DOES 1 - 14, | |
| Defendants. | |

**DECLARATION OF THOMAS CARPENTER IN SUPPORT OF PLAINTIFF' MOTION
FOR LEAVE TO TAKE DISCOVERY PRIOR TO RULE 26(f) CONFERENCE**

I, Thomas Carpenter, declare:

1.      I am Director, Data Services for the MediaSentry business unit of  SafeNet, Inc.

("MediaSentry"), where I have been employed since January 2005.  MediaSentry is a leading

provider of online anti-piracy services for the motion picture, music, game and business

software, and print publishing sectors.  Before my employment with MediaSentry, I held various

senior level positions at companies that developed Internet based technologies and have

approximately ten years of experience related to the protocols, technical architecture and operation of the Internet.

2.      I submit this declaration in support of Plaintiffs' Motion for Leave to Take Discovery Prior to Rule 26(f) Conference.  This declaration is based on my personal knowledge, and if called upon to do so, I would be prepared to testify as to its truth and accuracy.

3.      MediaSentry has developed a technology platform that provides an effective means to detect unauthorized distribution of digital music, software, games, content, and movies over online media distribution systems, or "peer-to-peer" ("P2P") networks.  At MediaSentry, I am the head of the department that carries out evidence collection  and provides litigation support services.  I work closely with our development team to create credible techniques to scan for, detect, and download copies of copyrighted material on multiple network protocols for use by copyright owners.

4.      MediaSentry was hired on behalf of Plaintiffs to monitor and identify copyright infringement of specified motion pictures on P2P networks.  Under direct supervision of Plaintiffs' counsel, we engaged in a specific process utilizing specially designed software and other technology to identify direct infringers of Plaintiffs' copyrights on P2P networks.

5.      Plaintiffs provided us with a list of copyrighted motion pictures they believe may be offered for distribution on P2P networks.

6.      All of the users named as Doe Defendants were identified in one of two ways. We either: (1) searched for files corresponding to one of the motion picture titles on the list provided by the Plaintiffs and then identified the users who are offering the files; or (2) reviewed server logs obtained from P2P networks to determine the users who were offering the files.  In the first identification method, we use the same core technical processes that are used by the P2P users on each respective network to identify users who are offering the specified motion picture files on the network, or to directly locate the specified files.  In the second identification method, we reviewed the same data that would be available to the operator of a server that is part of the

P2P network.  Under the first method of identification, any user of a P2P network can obtain the information that is obtained by us from the P2P network.  Under the second method of identification, any operator of a server that is part of the P2P network can obtain the information that is obtained by us from the P2P network.

7.     Once our searching software program identifies a file that it being offered for distribution that corresponds to one of the titles on the provided list of copyrighted motion pictures, or once such a file is identified directly from our search or our review of server logs, we obtain the Internet Protocol ("IP") address of a user offering the file for download.  When available, we also obtain the user's pseudonym or network name and examine the user's publicly available directory on his or her computer for other files that lexically match the motion pictures on Plaintiffs' list.  We then download at least one motion picture that the user is offering.In addition to the file of the motion picture itself, we download or otherwise collect publicly available information about the network user that is designed to help Plaintiffs identify the user. Among other things, we download or record for each file downloaded: (a) the time and date at which the file was distributed by the user; (b) the IP address assigned to each user at the time of infringement; and, in some cases, (c) the video file's metadata (digital data about the file), such as title and file size, that is not part of the actual video content, but that is attached to the digital file and helps identify the content of the file.  We then create evidence logs for each user that store all this information in a central database.

8.     An IP address is a unique numerical identifier that is automatically assigned to a user by its Internet Service Provider ("ISP") each time a user logs on to the network.  Each time a subscriber logs on, he or she may be assigned a different IP address.  ISPs are assigned certain blocks or ranges of IP addresses.  ISPs keep track of the IP addresses assigned to its subscribers at any given moment and retain such "user logs" for a limited amount of time.  These user logs provide the most accurate means to connect an infringer's identity to its infringing activity.

3

9.      Although users' IP addresses are not automatically displayed on the P2P networks, any user's IP address is readily identifiable from the packets of data being exchanged. The exact manner in which we determine a user's IP address varies by P2P network.

10.     An infringer's IP address is significant because it is a unique identifier that, along with the date and time of infringement, specifically identifies a particular computer using the Internet.  However, the IP address does not enable us to ascertain with certainty the exact physical location of the computer or to determine the infringer's identity.  It only enables  us to trace the infringer's access to the Internet to a particular ISP and, in some instances, to a general geographic area.  Subscribing to and setting up an account with an ISP is the most common and legitimate way for someone to gain access to the Internet.  An ISP can be a telecommunications service provider such as Verizon, an Internet service provider such as America Online, a cable Internet service provider such as Comcast, or even an entity such as a university that is large enough to establish its own network and link directly to the Internet.

11.     Here, the IP addresses identified enable us to determine which ISP was used by each infringer to gain access to the Internet.  Publicly available databases located on the Internet list the IP address ranges assigned to various ISPs.  However, some ISPs lease or otherwise allocate certain of their IP addresses to other unrelated, intermediary ISPs.  Since these ISPs consequently have no direct relationship -- customer, contractual, or otherwise -- with the end-user, they are unable to identify the Doe Defendants through reference to their user logs.  The intermediary ISPs' own user logs, however, should permit identification of the Doe Defendants.

12.     Here, we determined that the Doe Defendants here were using Verizon Internet Services, Inc. ("Verizon") to gain access to the Internet and distribute and make available for distribution and copying the copyrighted motion pictures identified.  We downloaded the motion picture file and other identifying information described above and created evidence logs for each Doe Defendant.  Once we identified the ISP used by the Doe Defendants to gain access to the Internet from the IP address, Plaintiffs' counsel, using the MediaSentry application, sent an e-mail to the relevant contact at Verizon informing Verizon of the Doe Defendant's IP address and

the date and time of the infringing activity.  That e-mail message requested that Verizon retain

the records necessary to identify its subscriber who was assigned that IP address at that date and

time.  Once provided with the IP address, plus the date and time of the infringing activity, the

Doe Defendant's ISP quickly and easily can use its subscriber logs to identify the name and

address of the ISP subscriber who was assigned that IP address at that date and time.

I declare under penalty of perjury that the foregoing is true and correct.


Executed on _____, _____, at _____.


_____
                                    Thomas Carpenter

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TWENTIETH CENTURY FOX FILM CORPORATION, a Delaware corporation; UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP, a Delaware limited liability limited partnership; PARAMOUNT PICTURES CORPORATION, a Delaware corporation; SCREEN GEMS, INC., a Delaware corporation; DISNEY ENTERPRISES, INC., a Delaware corporation; WARNER BROS. ENTERTAINMENT INC., a Delaware corporation; and COLUMBIA PICTURES INDUSTRIES, INC., a Delaware corporation, <br><br> Plaintiffs, <br><br> v. <br><br> DOES 1 - 14, <br><br> Defendants. | Civil Action No.: 1:06-cv-00668 |

## DECLARATION OF R. CHRISTOPHER HARSHMAN IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO TAKE DISCOVERY PRIOR TO RULE 26(f) CONFERENCE

I, R. Christopher Harshman, declare:

1.      I am a Litigation Clerk for the Motion Picture Association of America, Inc. ("MPAA"), where I have been employed since February 2002.  The MPAA is a trade association whose members include the largest motion picture studios in the United States.  Among other things the MPAA does on behalf of its member companies is to investigate the unauthorized reproduction and distribution of copyrighted motion pictures.  As a Litigation Clerk, I am responsible for identifying and investigating on-line piracy of motion pictures, including gathering evidence of on-line piracy to support outside counsel's enforcement efforts.  I submit

this declaration in support of Plaintiffs' Motion for Leave to Take Discovery Prior to Rule 26(f) Conference.

2.      This declaration is based on my personal knowledge, and if called upon to do so, I would be prepared to testify as to its truth and accuracy.

3.      As part of my responsibilities at the MPAA, I have been designated to confirm that the digital files downloaded by MediaSentry are actual copies of the Plaintiffs' motion pictures.  It is possible for digital files to be mislabeled or corrupted; therefore, Plaintiffs do not rely solely on the labels and metadata attached to the files themselves to determine which motion picture is copied in the downloaded file, but also to confirm through a visual comparison between the downloaded file and the motion picture itself.

4.      As to each motion picture identified in the Complaint, I have either watched the motion picture in a movie theater during the picture's theatrical release or I have watched a DVD or VHS copy of the motion picture provided by Plaintiffs.  After MediaSentry identified the Doe Defendant and downloaded the motion pictures he or she was distributing, I accessed the downloaded files on MediaSentry's software application which stores the files downloaded.  I opened the downloaded file, watched it and confirmed that it contains a substantial portion of the motion picture identified in the Complaint.

I declare under penalty of perjury that the foregoing is true and correct.


Executed on _____, _____, at _____.


_____
R. Christopher Harshman

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| TWENTIETH CENTURY FOX FILM CORPORATION, a Delaware corporation; UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP, a Delaware limited liability limited partnership; PARAMOUNT PICTURES CORPORATION, a Delaware corporation; SCREEN GEMS, INC., a Delaware corporation; DISNEY ENTERPRISES, INC., a Delaware corporation; WARNER BROS. ENTERTAINMENT INC., a Delaware corporation; and COLUMBIA PICTURES INDUSTRIES, INC., a Delaware corporation,<br><br>    Plaintiffs,<br><br>        v.<br><br>DOES 1 - 14,<br><br>        Defendants. | Civil Action No.: |

**[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR LEAVE TO TAKE DISCOVERY PRIOR TO RULE 26(f) CONFERENCE**

The Court has read all papers filed in connection with Plaintiffs' Motion for Leave to Take Discovery Prior to Rule 26(f) Conference (the "Motion"), and considered the issues raised therein, including relevant privacy issues.

IT IS HEREBY ORDERED that the Motion is granted.

IT IS FURTHER ORDERED that Plaintiffs may serve immediate discovery on Verizon Internet Services, Inc., or any other entity identified by Verizon Internet Services, Inc. as providing network access or online services to one or more of the Doe Defendants, by serving

a Rule 45 subpoena that seeks information sufficient to identify each Doe Defendant, including his or her name, address, telephone number, email address, and Media Access Control address.

IT IS FURTHER ORDERED THAT any information disclosed to Plaintiffs in response to the Rule 45 subpoenas may be used by Plaintiffs solely for the purpose of protecting Plaintiffs' rights under the Copyright Act.

Dated:_____        _____
                                   United States District Judge